❑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.23-876M(NJ) |
| A black Samsung Galaxy currently held as | ) |
| evidence inside the FBI-Milwaukee Head | ) |
| Quarters, as further described in Attachment A | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 4/21/2023_____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Nancy Joseph_____.
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial) and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____.

Date and time issued:4/7/2023 @ 11:23 _____
a.m.

City and state:   Milwaukee, Wisconsin _____

*Judge's signature*

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**<u>ATTACHMENT A</u>**
**Property to be Searched**

      The property to be searched are the cellular phone recovered from David N. SCHLOSSER in his 2007 silver Cadillac, with Wisconsin license plate AML9692 on March 27, 2023, more fully described as the following, hereinafter referred as the "Device":

      a) black Samsung Galaxy currently held as evidence inside the FBI-Milwaukee Head Quarters;

      This warrant authorizes the forensic examination of the device for the purposes of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B
## Particular Things to be Seized

1.      All records and information on the Device described in Attachment A that relate to violations of Title 21 United States Code Sections 841(a)(1) and 846, possession with intent to distribute and distribution of controlled substances and conspiracy to possess with intent to distribute and distribute controlled substances, including:

    a.  Preparatory steps taken in furtherance of this crime;

    b.  Any audio, video, and/or photograph(s) files on the phone of criminal activity or of evidentiary value;

    c.  All voicemail and call records;

    d.  All text messages and call history;

    e.  Contact list, to include names, addresses, phone numbers, and/or email addresses;

    f.  All social media sites used and applications for social media sites;

    g.  Lists of customers and related identifying information;

    h.  Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    i.  Types, quantities, and prices of firearms possessed;

    j.  Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and,

    k.  All bank records, checks, credit card bills, account information, and other financial records.

    l.  All internet activity;

    m.  All location data including from the phone and/or from any downloaded applications;

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.    Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>A black Samsung Galaxy currently held as evidence<br>inside the FBI-Milwaukee Head Quarters, as further<br>described in Attachment A | )<br>)<br>)<br>)<br>)<br>)   Case<br>No.23-876M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 & 846 | Possession of methamphetamine, distribution of methamphetamine, and conspiracy to possess and distribute methamphetamine. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI TFO Kristian P. Perales
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:4/7/2023

_____
*Judge's signature*

City and state:   Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT
Matter Number 2022R00524**

I, Kristian P. Perales, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a state certified law enforcement officer employed as a Master Trooper with the Wisconsin State Patrol (WSP) and have been a sworn officer in the State of Wisconsin for over 22 years.  I am also currently a federally deputized task force officer for Federal Bureau of Investigation's (FBI) Milwaukee Area Safe Streets Task Force (MASSTF).  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      The MASSTF is an investigative arm of the FBI and is charged under Title 18, United States Code, with the enforcement of laws governing possession of methamphetamine, distribution of methamphetamine and conspiracy to distribute methamphetamine and narcotics trafficking.

4.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses.  I have had formal training and have

participated in numerous complex drug trafficking investigations, including ones using wiretaps.

More specifically, my training and experience includes the following:

a.     I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.     I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.     I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.     I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.     I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.     I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.     I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.     I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.     I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5.      Based on my training, experience, I know conversations of narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through drug trafficker's cellphones using numerous phone applications, websites, conventional voice and text messages and other methods. I am familiar with many of the methods used by individuals who attempt to use cellphones to illegally distribute controlled substances. I have participated in numerous drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators.

6.      The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      I am currently participating in an investigation of possession of methamphetamine, distribution of methamphetamine and conspiracy to possess and distribute methamphetamine, in violation of Title 21 United States Code Sections 841 and 846, involving David N. SCHLOSSER, Noel R. LOZANO and others identified and not yet identified. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and

3

local law enforcement agents and officers; (c) information obtained from numerous witnesses, including confidential sources; (d) controlled buys; (e) documentary evidence; (f) physical and electronic surveillance; and (g) physical seizures.

## II.    IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.    The property to be searched is a cellular phone recovered from David N. SCHLOSSER's 2007 silver Cadillac, with Wisconsin license plate AML9692 on March 27, 2023, more fully described as the following, hereinafter referred as the "Device":

a) black Samsung Galaxy currently held as evidence inside the FBI-Milwaukee Head Quarters;

9.    The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## III.    PROBABLE CAUSE

10.    The MASSTF and local law enforcement have been investigating Noel R. LOZANO, David N. SCHLOSSER and other identified and unidentified persons involved with a drug trafficking organization (DTO). Since approximately September 2021 the DTO has been transporting methamphetamines through numerous counties of Wisconsin including, Milwaukee County; Waukesha County; and Washington County. The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information gathered from other law enforcement officers; documentary evidence; telephone toll data; controlled drug evidence purchases, controlled meetings with targets, recorded telephone calls with targets, and controlled payments of money; and physical surveillance.

11.    As part of the investigation into the DTO, case agents were made aware that SCHLOSSER who is located in West Bend, Wisconsin obtains controlled substances from

4

LOZANO. SCHLOSSER uses a variety of communication applications to distribute narcotics including Facebook and conventional cellular telephone text messaging and talk. Several other members of SCHLOSSER's DTO have been identified which include Andrew TRINKL, Tim LILLEY, Sharon WEIMER, and David Jakob KOENIG.

**A. Criminal History**

12. On February 23, 2023, case agents queried law enforcement databases regarding SCHLOSSER's criminal history. The following is a summary and not a complete list. SCHLOSSER has the following criminal arrests:

a) December 13, 1989, arrest by Washington County Sheriff for disorderly conduct;
b) August 20, 1990, arrest by West Bend Police Department for theft;
c) April 27, 1992, arrest by Washington County Sheriff for Burglary and Possession of Cocaine;
d) October 27, 1993, arrest by Washington County Sheriff for disorderly conduct;
e) March 21, 1994, arrest by Washington County Sheriff for manufacture/deliver controlled substance;
f) March 25, 1996, arrest by Washington County Sheriff for manufacture/deliver cocaine <=5g second/subsequent drug offense;
g) May 16, 1999, arrest by Hartford Police Department for disorderly conduct;
h) May 18, 1999, arrest by Washington County Sheriff for disorderly conduct;
i) April 30, 2004, arrest by Fond du Lac County Sheriff for disorderly conduct/domestic abuse;
j) August 22, 2006, arrest by Sheboygan County Sheriff for forgery-uttering and make false/forged prescription order;
k) January 5, 2008, arrest by Sheboygan Police Department for retail theft;
l) November 11, 2010, arrest by Hales Corners Police Department for theft-moveable property;
m) January 4, 2011, arrest by Sheboygan County Sheriff for retail theft-intentionally take;
n) June 24, 2011, arrest by Ozaukee County Sheriff for possession of schedule I and II narcotic drugs;
o) August 2, 2011, arrest by West Bend Police Department for forgery-writings or objects;
p) August 9, 2011, arrest by Sheboygan County Sheriff for disorderly conduct and criminal damage to property;
q) August 21, 2011, arrest by Sheboygan County Sheriff for theft-moveable property;

5

r) November 14, 2011, arrest by Calumet County Sheriff for retail theft-intentionally take;

s) December 28, 2011, arrest by Franklin Police Department for retail theft-intentionally take;

t) January 11, 2012, arrest by West Bend Police Department for credit card-fraudulent use;

u) February 22, 2015, arrest by West Bend Police Department for retail theft-alter price;

v) July 20, 2015, arrest by Kewaskum Police Department for bail jumping-felony;

w) October 29, 2015, arrest by West Bend Police Department for misappropriation of person identification to avoid civil/criminal penalty;

x) February 9, 2017, arrest by Washington County Sheriff for theft-moveable property;

y) February 28, 2021, arrest by West Bend Police Department for possession of narcotic drugs and drug paraphernalia.

**B. Controlled Buys**

13.     As part of the investigation into the DTO, case agents have used a Confidential Human Source ("CHS").  CHS has contacted or was contacted by SCHLOSSER to conduct the purchase of methamphetamine using SCHLOSSER's telephone number 262-573-5480 and 262-208-6211 and SCHLOSSER's Facebook, D.Schlosser65, using Facebook Messenger.  CHS received a price for the requested amount of methamphetamine and a meeting location for the delivery of methamphetamine from SCHLOSSER during these contacts. CHS was able to identify SCHLOSSER as the person CHS contacted based on prior interactions with SCHLOSSER.

14.     During the below listed controlled buys of controlled substances the CHS placed a recorded phone call to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement.  Additionally, the controlled substances were all weighed and tested positive for the listed substance and the target was identified by the CHS through photographs.  Further, prior to all controlled buys with

6

SCHLOSSER, case agents were conducting surveillance of 1533 Barton Avenue, West Bend, Wisconsin 53090, which was identified as an address associated with SCHLOSSER.

### a. First Controlled Drug Buy – January 17, 2023

15.     On December 21, 2022, CHS set up a controlled buy of methamphetamine from SCHLOSSER using telephone 262-573-5470. SCHLOSSER and CHS agreed to meet in the area of 1500 Barton Avenue, West Bend, Wisconsin.  CHS drove to the location and met with SCHLOSSER.  After the transaction, CHS met with case agents and turned over the suspected methamphetamine.   The methamphetamine was tested with NARTEC METH-1 Methamphetamine/MDMA test kit and also with NARTEC Amphetamine/Opiates Marquis Reagent test kit.  Both test results were positive.  The weight of the methamphetamine was 1.0 grams.

### b. Second Controlled Drug Buy – January 4, 2023

16.     On January 4, 2023, CHS set up a controlled buy of methamphetamine from SCHLOSSER using telephones 262-573-5470 and 262-208-6211.    CHS went to the pre-determined area of 1500 Barton Avenue, West Bend, Wisconsin.  While CHS was on the way there, SCHLOSSER informed CHS that he was not able meet the CHS, but that another individual would be there to provide CHS with methamphetamine.   Once at the location another male identified as Andrew J. TRINKL provided CHS methamphetamine in exchange for money on behalf of SCHLOSSER.   Case agents were able to identify TRINKL based on past law enforcement contact and review of a prior booking photo.  After the transaction, CHS met with case agents and turned over the methamphetamine.   The methamphetamine was tested with NARTEC METH-1 Methamphetamine/MDMA test kit and NARTEC Amphetamine/Opiates Marquis Reagent test kit.  Both test results were positive.  The methamphetamine weighted 1.0

grams.

### c. Third controlled buy-January 11, 2023

17.    On January 11, 2023, CHS set up a controlled buy of methamphetamine from SCHLOSSER using telephone 262-573-5470. SCHLOSSER and CHS agreed to meet in the area of 1500 Barton Avenue, West Bend, Wisconsin.  CHS drove to the location and met with SCHLOSSER.  SCHLOSSER provided CHS with methamphetamine and CHS provided money to SCHLOSSER.  After the transaction, CHS met with case agents and turned over the suspected methamphetamine.    The  methamphetamine  was  tested  with  NARTEC  METH-1 Methamphetamine/MDMA test kit and also with NARTEC Amphetamine/Opiates Marquis Reagent test kit. Both test results were positive.  The weight of the methamphetamine was 3.4 grams.

### d. Fourth controlled buy-February 3, 2023

17.    On February 3, 2023, CHS set up a controlled buy of methamphetamine from SCHLOSSER using telephone 262-208-6211.  SCHLOSSER advised CHS that SCHLOSSER would be using "DJ" to conduct the transaction.  SCHLOSSER advised CHS to go to the area of the 200 block of West Roosevelt Drive, West Bend, Wisconsin.  SCHLOSSER told CHS that the methamphetamine would be in "DJ's" black Chevrolet Equinox.  SCHLOSSER direct CHS to go into the vehicle, get the methamphetamine and leave the money in the vehicle.  Based on the investigation into the DTO, case agents previously identified "DJ" as David Jakob KOENIG.  Case agents are aware that KOENIG drives a black Chevrolet Equinox with Wisconsin license plate 204-WUV.  CHS did as SCHLOSSER directed and located suspected methamphetamine inside DJ's" black Chevrolet Equinox.  No one was inside the vehicle at the time.  CHS then left the money in exchange for the methamphetamine inside the black Chevrolet Equinox.  After the

8

transaction, CHS met with case agents and turned over the suspected methamphetamine. The methamphetamine was tested with NARTEC METH-1 Methamphetamine/MDMA test kit and also with NARTEC Amphetamine/Opiates Marquis Reagent test kit. Both test results were positive. The weight of the methamphetamine was 3.23 grams. The methamphetamine was packaged and placed into evidence.

### e.    Fifth controlled buy-February 15, 2023

18**.**    On February 15, 2023, CHS set up a controlled buy of methamphetamine from SCHLOSSER using telephone 262-208-6211. CHS also communicated with SCHLOSSER on Facebook Messenger for this transaction using SCHLOSSER's Facebook, D.Schlosser65. SCHLOSSER and CHS agreed to meet in the area of 1500 Barton Avenue, West Bend, Wisconsin. CHS drove to the location and met with SCHLOSSER. SCHLOSSER provide CHS with suspected methamphetamine and CHS provided SCHLOSSER with money. After the transaction, CHS met with case agents and turned over the suspected methamphetamine. The methamphetamine was tested with NARTEC METH-1 Methamphetamine/MDMA test kit and also with NARTEC Amphetamine/Opiates Marquis Reagent test kit. Both test results were positive. The weight of the methamphetamine was 2.91 grams.

### C.  Additional Communication With DTO

19.    Around February 13, 2023, CHS advised that he/she had a conversation with SCHLOSSER on text message using telephone 262-208-6211. The conversation was to arrange for CHS to distribute controlled substances for SCHLOSSER. In the conversation SCHLOSSER asked CHS if they trusted "Sharon." CHS later identified "Sharon" as Sharon Weimer to case agents. SCHLOSSER also advised CHS to tell "Sharon" that the price is 200 for an eight ball. Based on my training and experience I know an "eight ball" refers to 3-3.5 grams of a controlled

9

substance.  SCHLOSSER advised CHS that CHS would keep $25 from "Sharon."  CHS stated that CHE trusts "Sharon."  CHS asked SCHLOSSER if he wants CHS to deliver to "Sharon."  SCHLOSSER said yes.  SCHLOSSER told CHS that he wants people to think it ss a wrap.  CHS stated that means that SCHLOSSER wants people to think that he is not selling methamphetamine anymore.

20.     Around February 15, 2023, CHS stated that he/she had contact with SCHLOSSER over Facebook Messenger. SCHLOSSER was using his Facebook account, D.Schlosser65.  CHS showed investigators the Facebook Messenger conversation.  The conversation between CHS and SCHLOSSER was about making a methamphetamine purchase.  SCHLOSSER told CHS that he was waiting on the bus.  Based on training, experience, and the investigation into this DTO and statements by CHS, case agents understood this to mean that SCHLOSSER was waiting to be supplied methamphetamine.  CHS advised SCHLOSSER to let CHS know when SCHLOSSER had received the methamphetamine.  CHS later messaged to SCHLOSSER if he had any update.  SCHLOSSER replied that it would be 45 minutes.   CHS also asked about the price and SCHLOSSER told CHS that the price was $160.00 cash or $175.00 with credit card.  Case agents are aware based on the investigation into the DTO, SCHLOSSER will accept drug payments using money applications like CashApp or Venmo.

**D.  CHS Information**

21.     On March 15, 2023, case agents were debriefing with CHS regarding the controlled buy.  During this meeting case agent learned CHS, while not under the supervision of law enforcement, obtained a clozapine and razapine from an individual.  CHS reached out to LOZANO in order to sell the substances and obtain money.  On March 9, 2023, CHS meet with LOZANO and exchanged the controlled substance for four ecstasy pills and $150.  CHS then consumed two

of the ecstasy pills and threw the remining pills out. CHS then used the money to make a car insurance payment. Case agents later reviewed electronic communication and court authorized electronic surveillance of LOZANO and verified all this information. CHS was admonished by law enforcement.

22.     CHS's information is credible and reliable regardless of the unauthorized meeting with LOZANO on March 9, 2023. CHS has provided information to certified Wisconsin law enforcement in the past, pertaining to individuals involved in illegal activities, which have been independently verified. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. This includes the controlled buys and communication with LOZANO outlined above. CHS has a past criminal history including arrest for drugs, theft, child neglect and operating a vehicle while impaired offenses. CHS has cooperated with law enforcement in exchange for consideration on a state felony drug charge and CHS is also receiving monetary compensation for services rendered.

### E.  Surveillance of SCHLOSER's Residence

23.     On March 13, 2023 case agents conducted a garbage pick from SCHLOSER's residence located at 1533 Barton Avenue, West Bend, Wisconsin. Case agents met at an undisclosed location with a City of West Bend sanitation employee and verified that there was no garbage in the garbage truck container area. Case agents maintained constant surveillance on the garbage truck throughout the pickup. Case agents observed the garbage truck pull up in front of 1533 Barton Avenue, West Bend, Wisconsin and pick up two cans of garbage and one can of recycling. Case agents followed the garbage truck to an undisclosed location and case agents removed the garbage from the garbage truck and took custody of it. The garbage was transported

11

back to the Washington County Sheriff's Office and MASSTF and the Washington County Drug Unit examined the trash. During the examination, a brown "Amazon" bag was located. The label on the exterior of the bag had "Jennifer Schlosser" "1533 Barton Ave, West Bend, WI 53090" and a phone number of "262-384-8118" on it. Also located inside of the brown Amazon bag was a clear, vacuum sealed bag that had been opened with green leafy material that was still in it. Based upon training and experience, case agents believed that to be marijuana (THC). Case agents tested the green leafy material with a #5 Duqenois-Levine Marijuana Reagent test kit. The result of the test was positive for THC. The evidence was packaged and placed into evidence at the Washington County Sheriff's Office.

24.     Again on March 20, 2023 case agents conducted another garbage pick from 1533 Barton Avenue, West Bend, Wisconsin. Case agents met with a City of West Bend sanitation employee at an undisclosed location and verified that the garbage truck did not have any garbage in the container area. Case agent rode along in the garbage truck with the sanitation worker while this operation took place while another case agent followed an observed from behind. The garbage truck pull over in front of 1533 Barton Avenue, West Bend, Wisconsin and pick up two garbage cans and empty them into the garbage truck. Case agents followed the garbage truck to an undisclosed location and removed the garbage from the garbage truck and took custody of it. It was transported to the Washington County Sheriff's Department where MASSTF and Washington County Drug Unit examined the garbage. During the examination of the garbage, one pipe believed to be used to smoke methamphetamine and a picture of James Schlosser, who was identified as David Schlosser's son during this investigation, were found together. Case agents tested the pipe with a NARTEC METH-1 Methamphetamine/MDMA and NARTEC AMPHETAMINE/OPIATES Marquis Reagent. Both tests were positive for presence of

methamphetamine. A clear vacuum sealed bag with green leafy material with the writing "GMO COOKIES 28g" was located in the garbage along with identifying information of Jennifer Schlosser with the address of 1533 Barton Avenue, West Bend, Wisconsin on United States mail. Case agents tested the green leafy material and it tested positive for the presence of THC. All items were packaged and placed into evidence.

**F. Search Warrant on 1533 Barton Avenue, West Bend, Wisconsin**

25.     On March 27, 2023 case agents served a search warrant on the residence based on the garbage pulls from March 13, 2023 and March 20, 2023. Prior to serving the search warrant, SCHLOSSER left the residence to go to work. SCHLOSSER was driving his 2007 silver Cadillac with Wisconsin license plate AML9692. Washington County Sheriff's Office stopped SCHLOSSER and took him into custody for pending theft cases from the West Bend Police Department. SCHLOSSER was also on probation at that time. As a result of that traffic stop, approximately 1.76g of methamphetamine was recovered from the vehicle that was in SCHLOSSER's lunch container. SCHLOSSER's black Samsung Galaxy cellphone was also located on the front passenger seat and taken by law enforcement during the traffic stop. After SCHLOSSER was taken into custody, the search warrant was served at 1533 Barton Avenue, West Bend, Wisconsin. The result of the search warrant was the recovery of a small amount of methamphetamine, marijuana and drug paraphernalia.

26.     I know that persons (to include SCHLOSSER) who engage in ongoing criminal drug trafficking use cellular devices to further their activities. I know that drug traffickers use cellular devices to maintain contact with other affiliates and store information relating to drug trafficking. I know that evidence of drug trafficking can be held on the photographs, videos, call logs, text messages, contact lists, and otherwise stored digital information. I know that drug

traffickers often record images and/or videos depicting narcotic evidence, maintain contact with others regarding drug trafficking through cellular devices which would be recorded in call logs and text messages, as well as maintain a contact list of affiliates within their cellular devices for personal reference and use. I know that additional evidence of drug trafficking would be stored within other digital stored memory of the cellular devices, and that law enforcement investigators could retrieve the electronically stored evidence if accessible.

27.     This Device are currently in the lawful possession of the FBI at FBI-Milwaukee Head Quarters.

28.     Based on my training and experience and work with fellow law enforcement, I know that this device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the device first came into the possession of law enforcement.

## IV.     TECHNICAL TERMS

29.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

14

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30. Based on my training, experience, and research, I know that the Device have capabilities that allow it to serve as a wireless telephone, digital camera and video recorder, portable media player, internet web browser, and GPS navigation device. In my training and

15

experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## V.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

32.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

   b.    Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

16

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

33. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

34. *Manner of execution.* Because this warrant seeks only permission to examine the Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VI. CONCLUSION

35. Based on the above information provided in this affidavit, I believe there is probable cause that the Device possessed by David N. SCHLOSSER in his 2007 silver Cadillac, with Wisconsin license plate AML9692 on March 27, 2023, contains evidence of violations of Title 21 United States Code Sections 841(a)(1) and 846, possession with intent to distribute and distribution of controlled substances and conspiracy to possess with intent to distribute and distribute controlled substances.

17

**ATTACHMENT A**
**Property to be Searched**


The property to be searched are the cellular phone recovered from David N. SCHLOSSER

in his 2007 silver Cadillac, with Wisconsin license plate AML9692 on March 27, 2023, more fully

described as the following, hereinafter referred as the "Device":

      a) black Samsung Galaxy currently held as evidence inside the FBI-Milwaukee
         Head Quarters;

This warrant authorizes the forensic examination of the device for the purposes of

identifying the electronically stored information described in Attachment B.

**<u>ATTACHMENT B</u>**
**Particular Things to be Seized**

1.        All records and information on the Device described in Attachment A that relate to violations of Title 21 United States Code Sections 841(a)(1) and 846, possession with intent to distribute and distribution of controlled substances and conspiracy to possess with intent to distribute and distribute controlled substances, including:

      a.   Preparatory steps taken in furtherance of this crime;

      b.   Any audio, video, and/or photograph(s) files on the phone of criminal activity or of evidentiary value;

      c.   All voicemail and call records;

      d.   All text messages and call history;

      e.   Contact list, to include names, addresses, phone numbers, and/or email addresses;

      f.   All social media sites used and applications for social media sites;

      g.   Lists of customers and related identifying information;

      h.   Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

      i.   Types, quantities, and prices of firearms possessed;

      j.   Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and,

      k.   All bank records, checks, credit card bills, account information, and other financial records.

      l.   All internet activity;

      m.  All location data including from the phone and/or from any downloaded applications;

2.        Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.     Records evidencing the use of the Internet Protocol address to communicate with using the internet including:

    a.  records of Internet Protocol addresses used;

    b.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review